**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
ROBERT L. PUGH, *et al.,*                     )
                                              )
                Plaintiffs,                   )
                                              )
        v.                                    )        Civil Action No. 02-2026-HHK
                                              )
SOCIALIST PEOPLE'S LIBYAN                     )
ARAB JAMAHIRIYA, *et al.,*                    )
                                              )
                Defendants.                   )
_____)

## JOINT PRE-TRIAL STATEMENT ON DAMAGES PHASE

The parties, by and through their undersigned counsel, hereby submit their Joint Pre-trial

Statement, as ordered by the Court on June 26, 2007, as amended on June 27, 2007.

**I.      Case Summary**

This is an action brought pursuant to the "terrorism exception" of the Foreign Sovereign

Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7), arising from the September 19, 1989 bombing

of Union des Transports Aeriens ("UTA") Flight 772, over the Tenere Desert in the African

country of Niger.  UTA Flight 772, a DC-10-30 aircraft owned by Plaintiff Interlease, Corp., a

U.S. corporation, was en route to Paris, France from N'djamena, Chad[1] when a suitcase bomb in

the cargo hold exploded, killing all 170 passengers and crew on board.  Seven of the passengers

were citizens of the United States.  Their estates and immediate family members, along with

Interlease, are the Plaintiffs in this case.  The Defendants are the Socialist Peoples' Libyan Arab

Jamahiriya, the Libyan External Security Organization ("LESO") and seven individuals, including

_____
[1]      Flight 772 had originated in Brazzaville, Congo.

Muammar Qadhafi and his brother-in-law, Abdullah Senoussi (collectively Defendants are referred to herein as "Libya").

This case was filed on October 16, 2002.  Plaintiffs sought damages for claims including wrongful death, survival, intentional infliction of emotional distress, loss of solatium, loss of consortium, and, with respect to Interlease, conversion, pursuant to state law.  Plaintiffs also sought damages for personal injury, and, with respect to Interlease, property damage and loss, pursuant to 18 U.S.C. § 2333(a).  In response to the Complaint, Libya moved to dismiss.  On October 27, 2003, the Honorable Thomas Penfield Jackson, who was then assigned this case, denied the motion in part and granted it in part.  *See Pugh v. Socialist Peoples' Libyan Arab Jamahiriya,* 290 F. Supp. 2d 54 (D.D.C. 2003) (granting motion only as to Interlease's claims against Libya but denying the remainder).  Libya appealed that decision, but the appeal was dismissed for lack of jurisdiction.  No. 03-7172 (D.C. Cir. Nov. 22, 2004).

Plaintiffs subsequently moved for partial summary judgment on liability and Libya cross-moved for summary judgment.  On May 11, 2006, this Court granted the motions in part and denied the motions in part.  2006 WL 2384915 (D.D.C. May 11, 2006).  Importantly, this Court noted that in the face of "a proper, and very detailed, statement of material facts as to which there is no genuine dispute" submitted by Plaintiffs, Libya "not only fail[ed] to submit any contrary evidence, but fail[ed] as well, even to suggest that contrary evidence might exist."  *Id.* at *3. Thus, this Court held that in this case "plaintiffs' evidence stands undisputed and overwhelmingly establishes defendants' culpability and involvement in the bombing of UTA Flight 772."  *Id.* at *4.[2]  The Court then ordered Plaintiffs to amend their Complaint to identify specific state law

---

[2]      Specifically, this Court ruled that "the evidence . . . makes clear that the bombing of UTA Flight 772 was carried out by the individual [Libyan official] defendants while acting within the

causes of action and to submit briefing on the proper choice of law for each plaintiff. *Id.* at *15-16. As a result, Plaintiffs, on May 19, 2006, amended their Complaint, and on May 30, 2006, filed a legal memorandum in further support of their motion for partial summary judgment on liability, consistent with this Court's legal determinations set forth in its May 11, 2006 opinion. Defendants did not respond to that memorandum or the legal arguments therein.

Instead, on July 18, 2006, Libya again moved to dismiss Plaintiffs' claims on jurisdictional grounds, citing President Bush's recent removal of Libya from the list of foreign states that sponsor terrorism. On September 3, 2006, following full briefing by the parties, this Court denied that motion. Libya thereafter filed another interlocutory appeal. On April 3, 2007, the Court of Appeals summarily affirmed this Court's denial of Libya's motion to dismiss. (No. 07-7167, D.C. Cir. April 3, 2007). Less than one week later, on April 9, 2007, this Court granted Plaintiffs summary judgment on liability against Libya and scheduled a damages hearing for the period August 13-16, 2007.

Defendants object to plaintiffs' case summary above within the Joint Pretrial statement as the June 26, 2007 Order of the Court does not require the inclusion of any such summary.

---

scope of their office and employment," and "under the authority of the Libyan state." *Id.* at 17-18. Based on that evidence, the Court issued a liability finding with respect to the six individual Libyan official Defendants under a number of federal statutory causes of action, including the so-called Flatow Amendment, 28 U.S.C. § 1605 note, the Torture Victim Protection Act, 28 U.S.C. § 1350 note, and 18 U.S.C. § 2333(a).

II.     **Parties and Counsel**

a.     **The following are counsel for all Plaintiffs:**

Stuart H. Newberger
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C.  20004-2595
(202) 624-2649
snewberger@crowell.com

Michael L. Martinez
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C.  20004-2595
(202) 624-2945
mmartinez@crowell.com

Laurel Pyke Malson
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C.  20004-2595
(202) 624-2576
lmalson@crowell.com

b.     **The following is counsel for all defendants:**

Arman Dabiri
Law Offices of Arman Dabiri
  & Associates, P.L.L.C.
1725 I Street, NW, Suite 300
Washington, D.C.  20006
(202) 349-3893
armandab@worldnet.att.net


III.     **Undisputed Issues and Stipulations**

None.

**IV.**    <u>**Trial and Witness Schedule**</u>

**a.**    <u>**Plaintiffs' Witnesses**</u>

1.    Robert L. Pugh
       2310 Cox District Road
       Woodstock, Vermont  05091

Mr. Pugh (husband of Bonnie Pugh) will be testifying in his individual capacity and in his capacity as: (1) Executor of the Estate of Bonnie Barnes Coverley, his deceased wife; and (2) Executor of the Estate of Malcolm R. Pugh, their deceased son.  Mr. Pugh will testify about his deceased wife, his relationship with her, his reaction at hearing of her death, how her death affected him, and related issues with respect to him and various family members, including his deceased son whose estate he represents.  (1 hour).

2.    Ioana Alimanestianu
       40 East 89th Street
       Apartment 10D
       New York, New York  10128-1218

Mrs. Alimanestianu (wife of Mihai Alimanestianu) will be testifying in her individual capacity and in her capacity as Executrix of the Estate of Mihai Alimanestianu, her late husband. She will testify about her deceased husband, her relationship with him, her reaction at hearing of his death, how his death affected her, and related issues with respect to her and various family members.  (40 minutes).

3.    Mary Kathryn Hassett
       1603 Oakleaf Lane
       Charlottesville, Virginia  22903

Mrs. Hassett (mother of Margaret Schutzius) will be testifying in her individual capacity and in her capacity as Executrix of the Estate of Margaret Schutzius, her late daughter.  She will testify about her deceased daughter, her relationship with, her reaction at hearing of her death,

how her death affected her, and related issues with respect to her and various family members. (40 minutes).

    4.       Ermine Hailey
               Post Office Box 177
               Realiotos, Texas  78376  (mailing address)

               Or

               County Road 262
               Realiotos, Texas  78376  (home address)

Mrs. Hailey (wife of Pat Wayne Huff) will be testifying in her individual capacity and in her capacity as Executrix of the Estate of Pat Wayne Huff, her late husband.  She will testify about her deceased husband, her relationship with him, her reaction at hearing of his death, how his death affected her, and related issues with respect to her and various family members.  (40 minutes).

    5.       Carla Malkiewicz
               16002 Koenig Lane
               Conroe, Texas  77384

Mrs. Malkiewicz (wife of Mark Corder) will be testifying in her individual capacity and in her capacity as Executrix of the Estate of Mark Corder, her late husband.  She will testify about her deceased husband, her relationship with him, her reaction at hearing of his death, how his death affected her, and similar and related issues with respect to her and various family members. (40 minutes).

    6.       Eddie Don Turlington
               2220 Peachtree
               Amarillo, Texas  79109

Mr. Turlington (son of James Turlington, Sr.) will be testifying in his individual capacity only.  He will testify about his relationship with his deceased father, his reaction at hearing of his

death, how his death affected him, and related issues with respect to him and various family members.  (40 minutes).

      7.     Debbie Vaughn Schooling
             2803 Dunaway
             Amarillo, Texas  79103

Mrs. Schooling (daughter of James Turlington, Sr.) will be testifying in her individual capacity, as well as in her capacity as Executrix of the Estate of James Turlington, Sr., her late father.  She will testify about  her deceased father, her relationship with him, her reaction at hearing of his death, how his death affected her, and related issues with respect to her and various family members.  (40 minutes).

      8.     Douglas Matthews
             Interlease, Inc.
             1266 West Paces Ferry Road
             Suite 514
             Atlanta, Georgia  30327

Mr. Matthews is the President and owner of Interlease, Inc., the company that owned the DC-10-30 that exploded as UTA Flight 772.  Mr. Matthews will testify about ownership of the aircraft and related business issues, and the effect on Interlease's business and himself of Defendants' actions that led to this case.  (1 hour).

      9.     Steven A. Wolf*
             Principal, National Forensic Accounting Practice
             LECG, LLC
             1725 I Street, N.W., Suite 800
             Washington, D.C.  20006

Mr. Wolf will testify as an expert accountant and economist.  He will offer opinions on the value of the estates of the seven U.S. victims of UTA 772, including their earning capacity over their natural expected life, and related valuation and income issues.  He will also testify with

respect to calculations of prejudgment interest for both the individual Plaintiffs and Interlease.

(90 minutes)

      10.     Donald E. Sommer, P.E.*
              President and Owner of Aeroscope, Inc.
              11901 Allison Street
              Broomfield, Colorado  80020

Mr. Sommer will offer expert testimony about the explosion on UTA 772, including where the bomb was situated on the airplane and the effect the explosion had on the passengers aboard the aircraft.  He will also offer the opinion that passengers survived the explosion, and were conscious of the fact they were about to die as they fell to earth.  (1 hour).

      11.     Richard A. Levy, M.D., M.P.H.*
              43 Kirkwood Road
              Scarborough, Maine  04074

Dr. Levy will offer expert testimony on the psychological and physiological reactions of people to their anticipated deaths, particularly in the context of an aviation disaster.  He will offer the opinion that passengers on UTA 772 likely suffered these effects.  (1 hour).

      12.     Douglas Kelly*
              Vice-President, Asset Valuation and Chief Appraiser
              AVITAS, Inc.
              14520 Avion Parkway
              Suite 220
              Chantilly, VA  20151

Mr. Kelly will offer expert testimony on various aspects of the economic value of the DC-10-30 aircraft owned by Interlease, Inc. that exploded as UTA Flight 772.  (1 hour).

      13.     In addition, Plaintiffs reserve the right to call any of the Plaintiffs who have submitted *de bene esse* depositions to provide live testimony consistent with their *de bene esse* testimony.  (30 min. each).

14.     Cross-Examination:  Plaintiffs intend to cross-examine Defendants' witnesses to the extent they are permitted to testify.  Plaintiffs, however, object to those witnesses as Defendants have failed to provide Plaintiffs copies of their expert reports or otherwise provide the content of or basis for their opinions and testimony.  (45 min. each).

**b.      Defendants' Witnesses**

1.      Richard B. Edelman, Ph.D.*
        8515 Whittier Boulevard
        Bethesda, MD 20817

Dr. Edelman will testify as an expert financial and economic analyst and will offer opinions on the value of the estates of the seven United States passengers on UTA 772, including their earning capacity and their natural life expectancy, as well as related valuation and income issues. Dr. Edelman will also further testify with respect to the calculation of pre-judgment interest for plaintiffs' claims.  (2 hours).

2.      Robert Griscom, Esq*
        3750 John J. Montgomery Dr, Suite "B"
        San Diego, CA 92123

Mr. Griscom will offer expert testimony on the various aspects of the economic value of the DC-10 aircraft owned by plaintiff Interlease.  (1 hour).

3.      Cross-Examination:  Defendants intend to cross-examine every witness listed by plaintiffs during trial.  (30 min. per witness).

**V.      Exhibit List**

**a.      Plaintiffs' Exhibits**

The list of Plaintiffs' Exhibits is attached hereto as Addendum 1.

**b.**    **Defendants' Exhibits**

The list of Defendants' Exhibits is attached hereto as Addendum 2.

      1.      Expert Report of Dr. Richard B. Edelman

      2.      Expert Report of Robert Griscom

**c.**    **Plaintiffs' Objections to Defendants' Exhibits**

Plaintiffs object to the Expert Reports identified as Exhibits by Defendants above.

Defendants have not provided Plaintiffs copies of those reports, or otherwise indicated their

content, or the opinions these experts intend to provide and the basis and reasons therefore.

**VI.**    **Deposition Testimony**

See section VII below.  Plaintiffs intend to offer the complete deposition testimony of

twenty nine (29) *de bene esse* depositions as set forth below in section VII.

**VII.**    ***De Bene Esse* Depositions**

Plaintiffs will offer at trial the following *de bene esse* deposition testimony in DVD format

for viewing by the Court, along with accompanying written transcripts:

a.    <u>Bonnie Pugh Family</u>

      1.      Anne Carey on her own behalf (Bonnie's daughter) and as Executrix of the
              Estate of Harvey Mills Coverley (Bonnie's father)
      2.      Sally Chisholm Johnson (Bonnie's sister) and as Executrix of the Estate of
              Georgia Mae Chisholm (Bonnie's mother)

b.    <u>Mihai Alimanestianu Family</u>

      1.      Joanna Alimanestianu (Mihai's daughter) on her own behalf
      2.      Nicholas Alimanestianu (Mihai's son) on his own behalf
      3.      Irina Alimanestianu (Mihai's daughter) on her own behalf
      4.      Alexander Alimanestianu (Mihai's son) on his own behalf
      5.      Simone A. Desiderio as Executrix of the Estate of Calin Alimanestianu
              (Mihai's brother)

6.     Kathy Alimanestianu as Executrix of the Estate of Serban Alimanestianu (Mihai's brother)

7.     Pauline Alimanestiano as Executrix of the Estate of Constantin Alimanestiano (Mihai's brother)

c.    <u>Mark E. Corder Family</u>

1.     Therese Coddington (Mark's sister) on her own behalf and as Executrix of the Estate of Edward Corder (Mark's father)

2.     Michael Corder (Mark's brother) on his own behalf

d.    <u>Pat Wayne Huff Family</u>

1.     Michael Huff (Pat's brother) on his own behalf

2.     Jan Pittillo (Pat's sister) on her own behalf and as Executrix for the Estate of James E. Huff (Pat's father) and the Estate of Janice Huff (Pat's mother)

3.     Jared Hill (Pat's son) on his own behalf

4.     Amanda Hill (Pat's daughter) on her own behalf

e.    <u>Margaret Schutzius Family</u>

1.     William C. Schutzius (Margaret's father) on his own behalf

2.     Christopher M. Schutzius (Margaret's brother) on his own behalf

3.     Catharine A. Schutzius (Margaret's sister) on her own behalf

4.     John B. Schutzius (Margaret's brother) on his own behalf

f.    <u>James Turlington, Sr. Family</u>

1.     Joyce Butler (James's sister) on her own behalf and as Executrix for the Estate of Elvee Turlington (James's mother)

2.     Russell Turlington (James's brother) on his own behalf

3.     Jimmy Bruce Turlington (James's son) on his own behalf

4.     David Olney Turlington (James's son) on his own behalf

5.     James Eldee Turlington, Jr. (James's son) on his own behalf

6.     Christopher Darwyn Turlington (James's son) on his own behalf

7.     Jana Elizabeth Turlington (James's daughter) on her own behalf

g.    <u>Donald Warner Family</u>

1.     Janet Warner (Donald's mother) on her own behalf and as Executrix of the Estate of Donald Warner and the Estate of Alvin Warner (Donald's father)

2.     Susan Warner (Donald's sister) on her own behalf

3.     Sherry Warner (Donald's sister) on her own behalf

## VIII.   <u>Relief Sought</u>

Plaintiffs seek an award of compensatory damages and pre-judgment interest as set forth below.  There are several components to the monetary relief sought by the Plaintiffs, which Plaintiffs describe briefly below.  To further aid the Court, Plaintiffs will submit as an exhibit at trial a chart outlining damages for each Plaintiff, which will include the applicable law for each Plaintiff's claims and a range of damages to which each Plaintiff is entitled.

### 1.   <u>Estates</u>

First, with respect to the estates of the seven United States citizens who perished on UTA Flight 772, the Court should award the estates the economic value of lost earnings over the expected life of those Plaintiffs.  These amounts have been calculated by Steven A. Wolf, and are set forth in his Report, which has been provided to Defendants.  Mr. Wolf also will testify as to the amounts, and the methodology he used to arrive at these calculations.  This measure of damages for wrongful death under state law is well recognized in "victims of terrorism" (as well as other) cases, and Mr. Wolf is the same economist who was deemed an expert and credited by Judges Bates of this District in the *Dammarell v. Islamic Republic of Iran* case.  *See e.g. Dammarell v. Islamic Republic of Iran,* 281 F. Supp. 2d 105, 199 (D.D.C. 2003) ("Courts have awarded economic damages in the form of lost wages, benefits, and retirement pay, and other out of pocket expenses, to individuals in other FSIA cases involving terrorist acts") (citing cases including *Kerr v. Islamic Republic of Iran,* 245 F. Supp. 2d 59, 63 (D.D.C. 2003) (Jackson, J.); *Surrette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 268 (D.D.C. 2002) (Friedman, J.); *Daliberti v. Republic of Iraq,* 146 F. Supp. 2d 19, 24 (D.D.C. 2001) (Oberdorfer, J.)).  *See also, Dammarell v. Islamic Republic of Iran,* 404 F. Supp. 2d 261, 299 (D.D.C. 2005) (granting an

award of lost wages for wrongful death, etc. under Virginia law to the Estate of Robert Ames).  A

Final Judgment Order was entered in *Dammarell* on September 7, 2006.

### 2.  **Immediate Family Members**

Second, the Court should award appropriate compensatory damages to "immediate

family" members of the seven United States citizen victims of UTA Flight 772, based on the

intentional infliction of emotional distress, and loss of consortium and/or solatium, from which

each of these immediate family members suffered.  The judges of this District have defined

"immediate family" to encompass "spouses, parents, siblings and children."  *Jenco v. Islamic

Republic of Iran,* 154 F. Supp. 2d 27, 36 n.8 (D.D.C. 2001) (Lamberth, J.) (citing Dan D. Dobbs,

The Law of Torts, § 310 (2000) (addressing the scope of recovery in consortium claims)); *aff'd

sub nom. Bettis v. Islamic Republic of Iran,* 315 F.3d 325, 337-38 (D.C. Cir. 2003) (affirming

Judge Lamberth's definition of "immediate family" and rejecting the inclusion of nieces and

nephews within the definition).

### (a)  **Spouse Awards**

The judges of this District have awarded a range of amounts for members of the four

categories – spouses, parents, siblings, and children – depending on the particular circumstances

of the case.  As this Court recognized, however, in *Cicippio-Puleo v. Islamic Republic of Iran*,

No. 01-1496-HHK (D.D.C. Oct. 7, 2005), "[t]here is no set formula established for calculating

damages for family members such as Plaintiffs [here]."  Slip Op., at 26.  For example, many of the

judges of this District have awarded spouses in "victims of terrorism" cases $10 million for their

pain, suffering, and loss of consortium and solatium.  The scenarios for these awards range from

spouses of hostages held for years in Lebanon to spouses of victims who were killed.  *See e.g.

Anderson v. Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000) (spouse of hostage held

for 6 ½ years awarded $10 million by Judge Jackson); *Sutherland v. Islamic Republic of Iran,* 151 F. Supp. 2d 27 (D.D.C. 2001) (spouse of hostage held for 6 ½ years awarded $10 million by Judge Lamberth); *Kerr v. Islamic Republic of Iran,* 245 F. Supp. 2d 59 (D.D.C. 2003) (spouse of college president assassinated awarded $10 million by Judge Jackson); *Dammarell v. Islamic Republic of Iran,* 404 F. Supp. 2d 261, 300-01 (D.D.C. 2005) (spouse of Robert Ames, who was killed in the Beirut embassy bombing, was awarded $10 million).  The $10 million figure, however, is clearly not an absolute.  In *Higgins v. Islamic Republic of Iran,* 2000 WL 33674311 (D.D.C. September 21, 2000), Judge Kollar-Kotelly of this Court awarded the spouse of Colonel William Higgins $12 million.  Higgins had been the victim of a gruesome torture and mutilation before being killed by terrorists.  Likewise, in *Hegna v. Islamic Republic of Iran,* 2005 WL 3276307 (D.D.C. January 22, 2002), this Court awarded the spouse $26 million in a case arising out of the hijacking of an aircraft and subsequent assassination of a passenger by way of a slow painful death.  In this case, an appropriate and significant award should be made as to each spouse – especially because of the painful and horrific way each of the seven Americans died on UTA Flight 772, and the truly senseless and barbaric nature of Libya's actions.

      **(b) <u>Parent Awards</u>**

With respect to parents, the awards historically, and almost uniformly, have been in the $5 million range.  For example, in *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2001), a case where a young Navy diver was beaten and tortured on a hijacked plane before being shot in the head and thrown on the airport tarmac, the parents of the victim were awarded $5 million each by Judge Jackson.  Similarly, in *Eisenfeld v. Islamic Republic of Iran*, 172 F. Supp. 2d 1 (D.D.C. 2000), Judge Lamberth awarded $5 million dollars to each of the parents of a young adult killed in terrorist bombing in Israel.  And, in *Wagner v. Islamic Republic of Iran,* 172 F.

14

Supp. 2d 128 (D.D.C. 2001), Judge Jackson likewise awarded $5 million to the living parent of a

Marine guard killed in a Beirut embassy bombing.  In this case, an appropriate and significant

award should be made as to each parent, or their estate where they have died since the UTA 772

bombing – especially because of the painful and horrific way each of the seven Americans died on

UTA Flight 772, and the truly senseless and barbaric nature of Libya's actions.

(c) **Sibling Awards**

Sibling awards in "victims of terrorism" cases have had the most variance among the

judges of this District.  For example, in *Cicippio-Puleo v. Islamic Republic of Iran*, No. 01-1496-

HHK (D.D.C. Oct. 7, 2005), this Court awarded each of the siblings of a hostage held in Lebanon

for more than five years $6.5 million.  In *Elahi v. Islamic Republic of Iran,* 124 F. Supp. 2d 97

(D.D.C. 2000), Judge Joyce Hens Green awarded each brother of an assassinated Iranian

dissident $5 million.  And, in *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C.

2001), Judge Jackson awarded each of the siblings of the Navy diver $3 million.  In this case an

appropriate and significant award should be made as to each sibling, or their estate where they

have died since the UTA 772 bombing – especially because of the painful and horrific way each of

the seven Americans died on UTA Flight 772, and the truly senseless and barbaric nature of

Libya's actions.

(d) **Child Awards**

Awards to the children of victims of terrorism also have varied widely depending on the

circumstances of the case.  In *Cicippio-Puleo v. Islamic Republic of Iran*, No. 01-1496-HHK

(D.D.C. Oct. 7, 2005), this Court awarded $6.5 million to each of the children of a hostage held

in Lebanon for more than five years.  In *Higgins v. Islamic Republic of Iran,* 2000 WL 33674311

(D.D.C. September 21, 2000), Judge Kollar-Kotelly of this Court awarded the child of the

murdered and tortured victim $12 million.  In *Dammarell v. Islamic Republic of Iran,* 404 F. Supp. 2d 261, 301-06 (D.D.C. 2005), Judge Bates awarded each of the children of Robert Ames $5 million.  In this case an appropriate and significant award should be made as to each child, or their estate where they have died since the UTA 772 bombing – especially because of the painful and horrific way each of the seven Americans died on UTA Flight 772, and the truly senseless and barbaric nature of Libya's actions.

### 3.   Damages for the destruction of the DC-10-30 aircraft

Interlease is entitled to compensation for the conversion and loss of its property, the DC-10-30 aircraft, under the laws of the State of Georgia and under 18 USC § 2333(a), as a U.S. corporation "injured in its property, . . . by reason of an act of international terrorism."  As reflected in the expert report, which was previously provided to Defendants, the property loss sustained by Interlease as a result of Defendants' terrorist acts is presently valued at $108,605,000, including prejudgment interest.

### Prejudgment Interest

"Prejudgment interest is an element of complete compensation," *West Virginia v. United States*, 479 U.S. 305, 310 (1987), "serving to compensate for the loss of money due as damages . . . until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."  *Id* at 311 n.2.  Courts in this Circuit routinely exercise their discretion to award prejudgment interest in order to fully compensate the aggrieved party.  *See, e.g., Motion Pictures Ass'n of Amer. Inc. v. Oman*, 969 F. 2d 1154, 1157 (D.C. Cir. 1996) ("interest compensates for the time value of money, and thus is often necessary for full compensation.");  *Dammarell v. Islamic Republic of Iran*, No. 01-224, 2006 WL 2583043, at *1, n.2 (D.D.C. Sept. 7, 2006) (awarding prejudgment interest and noting that "the nominal value attached to such

injuries should reflect interest and compounding over time . . .[A]ny assessment of the real value

of the noneconomic awards must take into consideration that time factor to reflect the time value

of money.").  Given the particularly heinous nature of Libya's acts that are the subject of this case,

the egregious losses sustained by Plaintiffs, and the delays in resolving Plaintiffs' claims due to

Libya's tactic of unnecessarily prolonging this litigation with, for example, meritless appeals, an

award of prejudgment interest is particularly warranted in this case.  *See, e.g., Oldham v. Korean

Air Lines, Ltd.*, 127 F. 3d 43, 54 (D.C. Cir. 1997) (finding district court's failure to award

prejudgment interest at prime rate in case involving shot down passenger airliner to be abuse of

discretion); *Forman v. Korean Airlines*, 84 F.3d 446, 451 (D.C. Cir. 1996) (affirming award of

prejudgment interest on all tort arising out of same Korean Airlines disaster.).

### Treble Damages under the Anti-Terrorism Act of 1991

Count IX of the Amended Complaint seeks treble damages of all compensatory damages

awards made to Plaintiffs against the individual Defendants sued in their individual capacity in this

case, Senoussi, Elazragh, Naeli, Musbah, Shibani, and El Ageli.  The basis for trebling is the Anti-

Terrorism Act ("ATA") of 1991, 18 U.S.C. § 2333(a) (2000).  That provision states that "[a]ny

national of the United States injured in his or her person, property, or business by reason of an act

of international terrorism … may sue therefore in any appropriate district court of the United

States and shall recover threefold the damages he or she sustains and the cost of the suit,

including attorneys' fees."  This Court recently recognized in *Hurst v. Socialist Libyan Arab

Jamahiriya,* 474 F. Supp. 2d 19, 28-29 (D.D.C. 2007), that while ATA trebling claims can be

brought against individuals who act on behalf of a foreign state, they cannot be pursued against

the state itself.  More recently, Judge Bates of this Court has held that "injuries consisting of

mental anguish and emotional pain and suffering … are cognizable under the ATA."  *Sisso v.

*Islamic Republic of Iran,* 2007 WL 2007582 (July 5, 2007), at *10-11.  Accordingly, in *Sisso,*

Judge Bates awarded a $5 million judgment against the foreign state to the child of a victim killed

in a terrorist bombing, and then trebled that amount to arrive at a separate $15 million judgment

awarded to the child against the terrorist organization pursuant to 28 U.S.C. § 2333(a).  This

Court should do the same here since the bombing of UTA Flight 772 was clearly a violent and

heinous criminal act that resulted in a painful and horrific death for the seven Americans who died

on UTA Flight 772.

### Defendants' Position

The Court's Order of June 26, 2007 states that "The parties will not be required to present

proposed findings of fact and conclusions of law before trial."  Defendants, pursuant to the Order

of the Court, retain the right to present their conclusions of law and findings of fact in response to

plaintiffs' assertions of law in section VIII of this pre-trial statement.


### IX.     Pending Motions

There are no pending motions.


### X.     Trial Brief

Neither Plaintiffs nor Defendants believe that a Trial Brief is necessary.


### XI.     Motions In Limine

Plaintiffs intend to move to exclude the testimony of Defendants' expert witnesses on the

basis that (a) Plaintiffs first learned their identity on July 27, 2007, the date of this Pre-trial

Statement; and (b) Defendants have failed to provide expert reports or the substance of the

experts' opinions and the basis therefore.

Defendants will oppose plaintiffs' motion in limine as plaintiffs have to the date of this pre-trial statement failed to send defendants any discovery requests relating to defendants intended witnesses.  During numerous meetings plaintiffs' counsel was informed that defendants would only be able prepare expert reports and retain expert witnesses when plaintiffs finalized and provided defendants the identity and the content of any expert reports.  Plaintiffs provided the identity of their expert witnesses and the content of their reports to the defendants on July 18 and July 20, 2007.  Finally, during the telephone proceeding held before Honorable Judge Henry H. Kennedy, on June 21, 2007, the Court instructed the parties to submit dicovery requests to their opposing counsel if they intended to obtain the identity of expert witnesses and any prepared reports.

### XII.    <u>Demonstrative Evidence, Physical Evidence, Videotapes</u>

As noted in Section VII above, Plaintiffs plan to introduce into evidence twenty nine DVDs that reflect the videotaped *de bene esse* testimony of most of the Plaintiffs.  Plaintiffs will also submit the expert reports of Steven Wolf, Donald Sommer and Richard Levy.  In addition, Plaintiffs will submit as an exhibit a chart that summarizes damages.  Plaintiffs will also use various family photographs and memorabilia as demonstrative exhibits.

Respectfully submitted,

 /s/ Stuart H. Newberger
Stuart H. Newberger, DC Bar # 294793
Michael L. Martinez, DC Bar #347310
Laurel Pyke Malson, DC Bar #317776
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Counsel for Plaintiffs


 /s/ Arman Dabiri
Arman Dabiri, DC Bar #463351
Law Office of Arman Dabiri
 & Associates, P.L.L.C.
1725 I Street, N.W., Suite 300
Washington, D.C.  20006
(202) 349-3893

Counsel for Defendants


*The foregoing Joint Pretrial Statement, as revised at the pretrial conference in the presence of counsel, shall stand as the pretrial order in this case.*


July 27, 2007

# ADDENDUM 1

## Plaintiffs' Exhibits

| Exhibit | Description |
|---|---|
| 1. | Transcript and DVD recording of deposition *de bene esse* of Anne Carey |
| 2. | Transcript and DVD recording of deposition *de bene esse* of Sally Chisholm Johnson |
| 3. | Transcript and DVD recording of deposition *de bene esse* of Joanna Alimanestianu |
| 4. | Transcript and DVD recording of deposition *de bene esse* of Nicholas Alimanestianu |
| 5. | Transcript and DVD recording of deposition *de bene esse* of Irina Alimanestianu |
| 6. | Transcript and DVD recording of deposition *de bene esse* of Alexander Alimanestianu |
| 7. | Transcript and DVD recording of deposition *de bene esse* of Simone A. Desiderio |
| 8. | Transcript and DVD recording of deposition *de bene esse* of Kathy Alimanestianu |
| 9. | Transcript and DVD recording of deposition *de bene esse* of Pauline Alimanestiano |
| 10. | Transcript and DVD recording of deposition *de bene esse* of Therese Coddington |
| 11. | Transcript and DVD recording of deposition *de bene esse* of Michael Corder |
| 12. | Transcript and DVD recording of deposition *de bene esse* of Michael Huff |
| 13. | Transcript and DVD recording of deposition *de bene esse* of Jan Pittillo |
| 14. | Transcript and DVD recording of deposition *de bene esse* of Jared Hill |
| 15. | Transcript and DVD recording of deposition *de bene esse* of Amanda Hill |
| 16. | Transcript and DVD recording of deposition *de bene esse* of William C. Schutzius |
| 17. | Transcript and DVD recording of deposition *de bene esse* of Christopher M. Schutzius |
| 18. | Transcript and DVD recording of deposition *de bene esse* of Catharine A. Schutzius |
| 19. | Transcript and DVD recording of deposition *de bene esse* of John B. Schutzius |
| 20. | Transcript and DVD recording of deposition *de bene esse* of Joyce Butler |
| 21. | Transcript and DVD recording of deposition *de bene esse* of Russell Turlington |
| 22. | Transcript and DVD recording of deposition *de bene esse* of Jimmy Bruce Turlington |
| 23. | Transcript and DVD recording of deposition *de bene esse* of David Olney Turlington |
| 24. | Transcript and DVD recording of deposition *de bene esse* of James Eldee Turlington, Jr. |
| 25. | Transcript and DVD recording of deposition *de bene esse* of Christopher Darwyn Turlington |
| 26. | Transcript and DVD recording of deposition *de bene esse* of Jana Elizabeth Turlington |
| 27. | Transcript and DVD recording of deposition *de bene esse* of Janet Warner |
| 28. | Transcript and DVD recording of deposition *de bene esse* of Susan Warner |
| 29. | Transcript and DVD recording of deposition *de bene esse* of Sherry Warner |
| 30. | Suggested Damages Chart |
| 31. | Expert Report of Steven A. Wolf |
| 32. | Letter from Steven A. Wolf of July 20, 2007 regarding prejudgment interest on the value of Interlease, Inc's. McDonnell Douglass DC 10-30 |
| 33. | Letter from Steven A. Wolf of July 20, 2007 regarding prejudgment interest on the value of Plaintiffs' claims |
| 34. | Expert Report of Don Sommer |
| 35. | Expert Report of Dr. Richard A. Levy, M.D. |
| 36. | Expert Report of Doug Kelly |